848

In the Matter of the Claim of ELEANOR CONSULA, Appellant, v. TOWN OF HARRISON et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by claimant from a decision of the Workmen's Compensation Board, one member dissenting, which reversed the decision of a Referee and denied death benefits to the widow and minor children of the decedent. On April 14, 1951 deceased, then a town policeman, sustained in the course of his employment an accidental injury ultimately diagnosed as a herniation of the intervertebral disc between L4 and L5 on the right side. On June 24, 1952 a laminectomy was performed, the disc removed and his spine fused. He was hospitalized until August 25, 1952. Continuing disablement caused his retirement from the police force in January, 1954. His first employment thereafter began on July 23, 1955 when he became a daytime watchman and continued until February 11, 1956. From October, 1956 to February 4, 1957 he drove a school bus. Divergent causes for the voluntary relinquishment of these employments are ascribed to deceased. It is undisputed that at the time of his death by suicide on March 4, 1957 deceased was suffering from a depressive psychosis. A majority of the board found that his mental derangement was not the result of the back injury and held that his death was not causally related to the accident of April 14, 1951. The issue on appeal is whether there is substantial evidence to support its findings. There is testimony that during the interval between the accident and the death deceased suffered severe back pain, great discomfort while wearing a prescribed back brace, dizziness, headaches and a continuing depression with crying spells and insomnia. One of his several sisters died on February 4, 1957. On February 11, accompanied by his wife, he consulted Doctor Demuth, a psychiatrist, who testified that he found deceased to be depressed, self-deprecatory and lacking in confidence. In part he attributed his tensions to the death of the sister. His psychiatric impression was that deceased was suffering a reactive depression to counteract which and to relieve his sleeplessness he prescribed separate medications. Complaining of "mental trouble" Mr. Consula and his wife on March 1, 1957 sought the advice of Doctor Nickerson who had performed the fusion operation and administered the post-operative treatment. This physician, noting his rapid mental deterioration, recommended immediate institutional psychotherapy in the nature of electric shock treatments. Mrs. Consula made an appointment with Doctor Demuth for March 5 to discuss his condition. Following the visit to Doctor Nickerson's office deceased evinced apprehension for his family in the event of his failure to survive the administration of the counseled therapy. On March 3 he suffered two physical episodes which caused his body to shake violently and immediately preceding his death on March 4 unfoundedly queried his wife as to whether or not she was about to leave him. Based on his observation and treatment of the deceased, Doctor Nickerson expressed the opinion that his injury was a competent producing cause of his mental condition and eventual suicide. A physician specializing in psychiatry in answer to a hypothetical question stated that deceased had a psychiatric and psychotic depression and that this mental derangement was causally connected with the accident of April 14, 1951. The official Medical Examiner testified that in her opinion based largely upon her public experience in cases of suicide the industrial accident and its sequelæ were the principal factors which caused deceased's mental disturbance and resulting suicide with despondency over the death of his sister as a possible precipitative element. Two psychiatrists testifying for the carrier were contrary-minded. They adopted the diagnosis of Doctor Demuth that deceased at the time of the suicide was suffering from a reactive depression, in the light of their professional experience considered this type of mental disturbance to have been an acute process never exceeding a period of six months in duration and concluded that

it was related to the death of the sister and not to the industrial accident of six years earlier. To re-enforce his opinion Doctor Gottlieb stated that a reactive depression invariably was related to the loss of a loved person or object and pointed to the failure of decedent to have consulted a psychiatrist before the sister's death and of his operating and attending surgeon over the years to have recommended that he do so. In an interim decision the board referred the file to an impartial neuropsychiatrist for an opinion as to causal relation between the suicide and the accident. He reported that " the death of his sister caused an acute [sic] reactive depression to develop" and his conclusion was " that both the injury with its sequelæ and the sister's death were causes of the serious depression which resulted in suicide." He found it impossible " to say that only one of them worked to produce that end result." In weighing the significance of the two factors " the severity of the changes after the sister's death" led him " to the opinion that it had the somewhat larger role." In his testimony he expressed similar views but added the more definitive one that decedent would not have committed suicide if his sister had not died. Appellant argues that the board's decision is contrary to the overwhelming weight of the evidence and that the testimony of respondents' expert witnesses and the impartial specialist was conjectural, speculative, based on erroneous and insufficient assumptions and hence lacking in probative force. The power to weigh and determine the facts is within the exclusive province of the board. Our limited jurisdiction on appeal does not permit the constriction of its freedom of action in those fields by requiring uniformity or consistency in its decisions. The citation by appellant of numerous authorities wherein the board's findings of causal relationship between psychotic illnesses ending in suicide and industrial accidents were affirmed provides no basis for the reversal of its decision in this case. (*Matter of McSweeney* v. *Hammerlund Mfg. Co.,* 275 App. Div. 447, motion for leave to appeal denied 301 N. Y. 815; *Matter of Meigh* v. *Sperry Gyroscope Co.,* 284 App. Div. 1074; *Matter of Szatkowski* v. *Bethlehem Steel Co.,* 1 A D 2d 716.) The board had before it sharply conflicting medical evidence on the question of causal relationship. Doubtless the record would support a finding in either direction. It chose to accept the employer's side of the issue. We may not say as a matter of law that its findings are not supported by substantial evidence. The board was not bound to accept the views of the impartial specialist. Nor do we perceive any basis upon which it can be held that the opinions of respondents' experts should have been disregarded by the board on the grounds urged. Decision of the Workmen's Compensation Board unanimously affirmed, without costs. Present — Bergan, P. J., Coon, Herlihy, Reynolds and Taylor, JJ.